Alejandro Montoya
Fed. Reg. No. 09850-041
Federal Correctional Institution
3600 Guard Road
Lompoc, California 93436

In Pro Se

RECEIVED
BY MAIL
NOV 15 2004
CLERK US DIST COURT
MINNEAPOLIS MN

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, Plaintiff, v. Alejandro Montoya, Defendant. | Case No. CV 04-3902(JMR) CR 01-115(02)(JMR) **DEFENDANT'S TRAVERSE TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255** |

INTRODUCTION

The Defendant/Petitioner, Alejandro Montoya, has filed a motion pursuant to 28 U.S.C. § 2255. The Defendant is asserting that his counsel was ineffective for failing to challenge the type and quantity of drugs attributed to him under the preponderance of the evidence standard in violation of Apprendi v. New Jersey and now Blakely v. Washington.

The government states that the claims are without merit. The Defendant claims that the governments arguments are misplaced and contain no merit whatsoever. In simple terms the government is in Apprendi, Blakely denial.

SCANNED
NOV 15 2004

## FACTS OF THE CASE

The Defendant's prosecution and convictions arise from the United States District Court, for the district of Minnesota, for aiding and abetting possession with intent to distribute more than 500 grams of a mixture containing methamphetamine and conspiracy to possess with intent to distribute more than 500 grams of a mixture containing methamphetamine. This was in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)A), and 846.

The jury instructions specifically stated that:

> In the indictment, it is alleged that a particular amount or quantity of methamphetamine is involved. The evidence in this case need not establish the **amount or quantity** of methamphetamine was as alleged in the indictment, but only that a measurable amount of the drugs was in fact subject to the acts charged in the indictment.

The defendant's Presentence Investigation Report at paragraph 16. Base offense level: finds the defendant responsible for 128 grams of actual methamphetamine. This type of methamphetamine was never charged in the indictment nor proven to a jury beyond a reasonable doubt.

In the Verdict forms that the government has provided state that the defendant was responsible for more than 500 grams of methamphetamine, however, the Verdict Forms do not mention what schedule the methamphetamine actually is.

## ARGUMENT

### THE DEFENDANT HAS DEMONSTRATED THAT HIS COUNSEL WAS INEFFECTIVE

It is clear that the Defendant's former counsel failed to challenge the type and or quantity of the drugs

in this case. This is a fatal flaw in his representation. There has been much litigation in this arena. The Courts are still out on this question on what the actual standard of proof should be, however, this does not excuse former counsel from challenging the type and quantity of the drugs attributed to the defendant in this case. At any standard of proof, former counsel failed to defend the defendant, and that unprofessional behavior and errors resulted in a proceeding that would have been different if said errors would have been raised. This is in violation of Strickland v. Washington, 466 U.S. 668,(1984).

The government tries to take the eye off of the issues that the defendant raised by showing the Court that former counsel's raised numerous issues and that this should suffice in the showing that counsel was effective. However, the government fails to show this Court that the former counsel's failed to make sure that the defendant's Sixth Amendment fight to a trial by jury was violated, and that the Supreme Court in Apprendi, and Blakely confim this fact.

Therfore applying the standards set forth in Strickland, the Defendant has established both (1) that his cousel's errors fell below the objective standard of "reasonableness under prevailing norms" and (2) that, but for the errors, the result would have been different, i.e., that the petitioner would not received the same sentence imposed upon him by the District Court.

THE GOVERNMENT HAS FAILED TO ADDRESSS THAT THE DEFENDANT WAS NEVER CHARGED NOR CONVICTED OF A CERTAIN SCHEDULE OF METHAMPHETAMINE

It is clear that there exist two schedules of methamphetamine, injectable and/or non-injectable. Since the government does not argue this issue they must conceed, therefore, the Defendant must be re-sentenced to the penalty provsisions of 21 U.S.C. § 841(b) for an injectable Schedule III form of methamphetamine. This would be under the penalty provisions of 21 U.S.C § 841(b)(1)(D) to no more than five years.

The District Court in this case was in error to take the findings of the Pre Sentence Investigation Report and sentence the Defendant for controlled substances that were never found beyond a reasonable doubt in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000), and now, Blakely v. Washington 72 USLW 4546, No. 02-1632 (June 24, 2004).

The defendant had a reasonable expectation to a trial by jury on any fact that would have increased his sentence. This was not done in this case. The former cousel did not place the government nor the Court through this burden of preserving his Sixth Amendment Right to a trial by jury on any fact that increases his sentence.

/

/

/

/

UNDER TYLER v. CAIN, THE COMBINATION OF SCHRIRO v. SUMMERLIN AND WINSHIP MANDATES APPRENDI'S RETROACTIVE APPLICATION.

In Tyler v. Cain, 533 U.S. 656 (2001), the United States Supreme Court held that a new rule of criminal procedure may be made retroactive through a series of that Court's cases:

> Justice BREYER observes that this Court can make a rule retroactive over the course of two cases. We do not disagree that, with the right combination of holdings, the Court could do this .... Multiple cases can render a new rule retroactive only if the holdings in those cases necessarily dictate retroactivity of the new rule.

Tyler, 533 U.S. at 666. In her concurrence, Justive O'Connor explained that the Court " 'ma[k]es' a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule." Tyler, 533 U.S. at 668-69 (O'Connor, J., concurring). Logic compels the retroactive application of Apprendi given the Supreme Court's recognition, in Shriro, that the Apprendi rule implicates fundamental fairness, and, in the host of Supreme Court decisions, of the heightened accuracy afforded by the criminal law's standard of proof beyond a reasonable doubt.

**A. Teague Mandates That New Recognized Constitutional Rules Of Criminal Procedural Be Applied Retroactively Where The Rule Both: (1) Implicates The Fundamental Fairness Of The Proceeding; And (2) Heightens The Accuracy Or Reliability Of The Outcome.**

In the plurality decision in Teague v. Lane, 489 U.S. 288 (1989), the Supreme Court announced that new procedural rules of constitutional law would generally not be applied retroactively to cases on collateral review. That decision has since been adopted by a majority of the Court. See, e.g., Penry v. Lynaugh, 492 U.S. 302 (1989). Teague and its progeny recognize two exceptions to the general principle that new rules of constitutional procedure

not apply retroactively. The first exception, not implicated here, is for "rules that place an entire category of primary conduct beyond the reach of the criminal law." Sawyer v. Smith, 497 U.S. 227 (1990)(citing Teague, 489 U.S. at 311).

The second exception requires that a new rule be applied retroactively for "those procedures that are implicit in the concept of ordered liberty." Teague, 489 U.S. at 311 (internal citations omitted). As the Court explained, such rules vindicate two discreet concerns: the fundamental fairness of the underlying proceeding; and the accuracy of that underlying criminal proceeding. Saffle v. Parks, 494 U.S. 484, 495 (1990). The Teague court explained that it was adapting a rule previously proposed by justice Harlan: "We believe it desirable to combine the accuracy element of the Desist [1] version of the second exception with the Mackey [2] requirement that the procedure at issue must implicate fundamental fairness." Teague, 489 U.S. at 312; see also id. at 302-13 (discussing Justice Harlan's views in detail).

**B. In Schriro, The Supreme Court Recognized That The Apprendi Rule Satisfies Teague's Fundamental Fairness Prong.**

In Schriro v. Summerlin, No. 03-526, 2004 WL 1402732, at *5-7 (U.S. June 24, 2004), a five-justice majority concluded that the decision in Ring v. Arizona, 536 U.S. 610 (2002), applying Apprendi to Arizona's capital sentencing scheme, does not apply retroactively under Teague. The Court began by reiterating Teague's

---

[1] Desist v. United States, 394 U.S. 244, 256-69 (1969) (Harlan, J. Dissenting).

[2] Mackey v. United States, 401 U.S. 667, 657-702 (Harlan, J. concurring).

second exceptions for rules "implicating the fundamental fairness and accuracy of the criminal proceeding." Id. at *3. The Court proceeded to parse these requirements: "That a new rule is 'fundamental' in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is seriously diminished." Id. (quoting Teague, 489 U.S. at 313) (emphasis in original). The Court went on to examine and reject the Ninth Circuit's conclusion that Ring fell within the second Teague exception, concluding that judicial fact-finding under a reasonable doubt standard was not shown to "seriously diminish" the accuracy of the sentencing. Id. at *5-7.

The Schriro majority's analysis of the second Teague exception began with its terse acknowledgment that the rule at issue was "fundamental," id. at *3, and then proceeded through a detailed analysis of the accuracy prong of the second exception, id. at *5-7. In the end, the Court reiterated that the "right to a jury trial is fundamental to our system of criminal procedure," but held that the Ring rule should not apply retroactively because it does not seriously enhance accuracy. Id. at *6-7.

The four dissenting justices disagreed, noting various reasons why jury findings are superior. Schriro, 2004 WL 1402732, at *9-12 (Breyer, J., dissenting). The dissent began its analysis by noting that all of the justices agreed that "Ring meets the first Teague criterion," by implicating fundamental fairness. Id. at *7. It was only on the second prong that the justices disagree. Id. [3]

---

[3] The majority, which had already noted the "fundamental" character of the underlying right, Schriro, 2004 WL 1402732, at *3, did not take exception to the dissent's characterization of the Court's unanimity as to the first prong of Teague's second exception analysis, although the majority did respond to three other "conten[tions]" of the dissent, id. at *6 & n.6.

**C. The Schriro Court's Conclusion That Ring Should Not Be Applied Retroactively Does Not Apply Here, Where The Lower Standard Of Proof Undermines The Accuracy Of The Proceeding's Outcome, Because The Determination At Issue In Ring Was Made Under The Beyond A Reasonable Doubt Standard.**

In Schriro, the majority's analysis turned on its conclusion that the evidence that "judicial fact-finding so 'seriously diminishes accuracy' . . . is simply too equivocal" to retroactivity. Schriro, 2004 WL 1402732 at *5 (internal modifications omitted). That conclusion was limited to the Ring rule, however, "[b]ecause Arizona law already required aggravating factors to be proved beyond a reasonable doubt." Id. at *2 n.1 (citing State v. Jordan, 126 Ariz. 283, 286, 614 P.2d 825, 828 (1980). Because the rule at issue here allowed judicial fact-finding under the diluted preponderance of the evidence standard, Schriro's ultimate conclusion that accuracy is not "seriously diminished" where a judge makes findings beyond a reasonable doubt is inapposite. [4]

**D. Increasing The Standard Of Proof From A Preponderance Of The Evidence To Beyond A Reasonable Doubt Seriously Enhances The Reliability And Accuracy Of The Outcome.**

The requirement of proof beyond a reasonable doubt is central to protecting the rights of the accused and the accuracy of criminal convictions. The Supreme Court has articulated the importance of that burden of proof in several contexts. In Cage v. Louisiana, the Court emphasized the vital role of the reasonable doubt standard in avoiding convictions based on factual error:

[T]he Due Process Clause of the Fourteenth Amendment "protects

---

[4] Justice O'Connor recently indicated in dissent that Schriro mandates that Apprendi not be applied retroactively. Blakely v. Washington, 2004 WL 1402697, at *16 (U.S. June 24, 2004) (O'Connor, J., dissenting). Justice O'Connor statement in Blakely is dicta in a dissenting opinion and is contrary to the Court's reasoning in Schriro, in which she joined.

> the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 . . . (1970) . . . This reasonable-doubt standard "plays a vital role in the American scheme of criminal procedure." Winship, 397 U.S. at 363. Among other things, "it is a prime instrument for reducing the risk of convictions resting on factual error."

498 U.S. 39, 39-40 (1990)(some internal citations omitted). Winship itself makes clear that the requirement of proof beyond a reasonable doubt is grounded upon accuracy concerns:

> The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for a commission of a crime when there is reasonable doubt about his guilt.

397 U.S. at 364. The Winship Court specifically rejected the margin of error permitted by a preponderance standard:

> There is always in litigation a margin of error, representing error in fact-finding, which both parties must take into account. Where one party has at stake an interest of transcending value - as a criminal defendant his liberty - this margin of error is reduced as to him by the process of placing on the other party the burden of . . . persuading the fact-finder at the conclusion at the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the fact-finder of his guilt. To this end, the reasonable-doubt standard is indispensable, for it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.

Winship, 397 U.S. at 364.[5]

The Supreme Court has repeatedly recognized the enhanced accuracy mandated by the rules in Winship and Mullaney. In Ivan V. v. City of New York, 407 U.S. 203, 205 (1972), the Court gave the rule announced in Winship retroactive effect, because "the major purpose of the constitutional standard of proof beyond a reasonable doubt announced in Winship was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function." Subsequently, in Hankerson v. North Carolina, 432 U.S. 233, 240 (1977), the Supreme Court relied on Ivan V. and applied Mullaney retroactively, because "the rule was designed

---

[5] The Court also highlighted society's discreet interest in a more accurate standard:

> Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper fact-finder of his guilt with utmost certainty.

Winship, 397 U.S. at 364; see also Jackson v. Virginia, 443 U.S. 307, 316-17 (1979)("The Winship doctrine requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the fact-finder will rationally apply that standard to the facts in evidence."); Francis v. Franklin, 471 U.S. 307, 322 n.8 (1985)(referring to the government's burden to prove every element beyond a reasonable doubt as grounded in "bedrock due process principles"); United States v. Nolasco, 926 F.2d 869, 871 (9th Cir. 1991)("The reasonable doubt standard gives substance to the presumption of innocence and instills confidence in the community that the innocent will not be condemned.").

to diminish the probability that an innocent person would be convicted and thus to overcome an aspect of a criminal trial that 'substantially impairs the truth-finding function.'" Id. at 242.

The Ninth Circuit's pattern jury instructions further illustrate this point. Compare Ninth Cir. Model Jury Inst. - Crim. 3.5 (2004),[6] with Ninth Cir. Model Jury Inst. - Civil 5.1 (2004).[7] A fact-finder who is firmly convinced of the truth of the fact found has reached, a priori, a more reliable conclusion than if he or she had conluded the fact was more likely than not true. As long line of Supreme Court cases illustrates, the criminal law's heightened standard of proof seriously enhances the accuracy of determinations.

**E. After Schriro, The Ninth Circuit's Opinion In Sanchez-Cervantes Is No Longer Good Law.**

In United STates v. Sanchez-Cervantes, 282 F.3d 664 (2002), the Ninth Circuit concluded that the Apprendi rule should not be applied retroactively. In Miller v. Gammie, 335 F.3d 889, 899-901 (9th Cir. 2003)(en banc), the Ninth Circuit instructed appellate panels and district court judges not to follow a prior opinion from the Circuit Courts when that opinion is "unreconcilable"

---

[6] Proof beyond a reasonable doubt is proof that leaves you firmly convinces that the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty. On the other hand, if after a careful and impartial consideration guilty, it is your duty to find the defendant guilty.

[7] When a party has the burden of proof on any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

with intervening Supreme Court decisions. Because Sanchez-Cervantes rationale is logically repudiated by the Schriro decision, Sanchez-Cervantes must no longer be followed.

In Sanchez-Cervantes, the panel analyzed Apprendi's potential application to a federal prisoner's challenge to his sentence under 28 U.S.C. §2255. 282 F.3d at 666-69. The Sanchez-Cervantes Court recognized the two-part Teague test:

> The Supreme Court has stated that to qualify under Teague['s second exception, new procedural] rules must not only improve the accuracy of the trial but also must alter our understanding of the "bedrock procedural elements essential to the fairness of the proceeding."

Sanchez-Cervantes, 282 F.3d at 670 (citing O'Dell v. Netherland, 521 U.S. 151, 167 (1997)). The panel went on to hold that the Apprendi rule was not sufficiently "sweeping" or "bedrock" as to be considered "fundamental . . . within Teague's second exception." Sanchez-Cervantes, 282 F.3d at 669-70. In Schriro, as discussed supra, the Supreme Court unanimously agreed that the Ring rule -- and therefore Apprendi -- involves fundamental fairness satisfying the first prong of Teague's second exception. See Schriro, 2004 WL 1402732 at *3 (Scalia, J.); id. at *7-8 (Breyer, J., dissenting).

The Sanchez-Cervantes Court also made three brief references to the accuracy prong of Teague's second exception, but its consideration improperly focused on the accuracy of the conviction rather than the sentence imposed. Sanchez-Cervantes, 282 F.3d at 669, 671. The panel began: "We do not believe that requiring the jury to make drug quantity determinations beyond a reasonable doubt will greatly affect the accuracy of convictions." Sanchez-Cervantes, 282 F.3d at 669. The panel's second reference

to accuracy removes any doubt that the Court intended to focus upon the accuracy of conviction even though the issue presented was the outcome of the sentencing proceeding: "The alleged Apprendi error only concerns an enhancement of the defendant's sentence based on a drug quantity finding by the judge. Therefore, the accuracy of the underlying conviction is not an issue." Id. Apprendi made absolutely clear, it is not the label ("enhancement") that governs the analysis; the Constitution requires a jury finding beyond a reasonable doubt as to each fact, other than recidivism, establishing the applicable sentencing range. Apprendi, 534 U.S. at 494.[8]

The panel's final discussion of accuracy was in the context of dismissing Supreme Court precedent giving Winship and Mullaney retroactive effect. Sanchez-Cervantes, 282 F.3d at 671. The panel concluded that Winship and Mullaney presented serious questions as to the accuracy of the determination of guilt, drawing an artificial distinction, eschewed in Mullaney and repudiated by Apprendi, Ring, and Blakely. Apprendi, 530 U.S. at 494-95; Ring, 536 U.S. at 597-609; Blakely, 2004 WL 1402697 at *6-7; see also Ring, 536 U.S. at 610 (Scalia, J., concurring).[9] In Mullaney, 421 U.S. at 698, the Supreme

---

[8] [T]he New Jersey Supreme Court correctly recognized that . . . "labels do not afford an acceptable answer." That point applies as well to the constitutionally novel and elusive distinction between "elements" and "sentencing factors." Despite what appears to us the clear elemental nature of the factor here, the relevant inquiry is one not of form, but of effect - does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict? Apprendi, 530 U.S. at 494 (citations omitted).

[9] The fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to the imposition of the level of punishment that the defendant receives - whether the statute calls them elements of the crime, sentencing factors, or Mary Jane - must be found by the jury beyond a reasonable doubt.

Ring, 536 U.S. at 610(Scalia, J., concurring).

Court condemned as unconstitutional Maine's attempt to characterize elements of its homicide statute as sentencing factors.

The distinction drawn by the Sanchez-Cervantes Court was also rejected by Blackstone centuries ago. 4 William Blackstone, Commentaries on the Laws of England, 2-3 (Legal Classics Library Special ed. 1983).[10] The framers of our constitution eschewed the distinction drawn by the Sanchez-Cervantes panel as well:

> Arbitrary impeachments, arbitrary methods of prosecuting pretended offences, and arbitrary convictions have ever appeared to me to be great engines of judicial despotism; and these have all relation to criminal proceedings. The trial by jury in criminal cases, aided by the habeas corpus act, seems therefore to be alone concerned in the question. And both of these are provided for in the most ample manner in the plan of the convention.

The Federalist No. 83 (Alexander Hamilton)(emphasis added).

The Sanchez-Cervantes panel also reasoned that the Apprendi rule would not have widespread application as "most sentences will not be affected by Apprendi because they fall within the statutory maximum of twenty years." Sanchez-Cervantes, 282 F.3d at 669.

---

[10] [T]o know with precision what the laws of our country have forbidden, and the deplorable consequences to which a wilful disobedience way expose us, is a matter of universal concern....

> But even us in England, where our crown law is with justice supposed to be nearly advanced to perfection; where crimes are more accurately defined, and penalties less uncertain and arbitrary; where all our accusations are public, and our trials in the face of the world.... We shall occasionally find room to remark some particulars, that seem to want revision and amendment.

4 Blackstone, at 2-3.

Once again, that Court's reasoning has been squarely rejected by the Supreme Court:

> Our precedents make clear, however, that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.... [T]he relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without additional findings.

Blakely, 2004 WL 1502697 at *4 (emphasis in the original).

The Sanchez-Cervantes Court attempted to bolster its conclusion that Apprendi's rule does not satisfy Teague's fairness prong by noting that the Circuit had applied harmless error analysis to Apprendi claims. Sanchez-Cervantes, 282 F.3d at 670. It concluded: "Therefore, it would seem illogical to hold that such error is a watershed rule that 'implicates the fundamental fairness of the trial.'" Id. (internal brackets omitted). The Supreme Court recently expressed its unanimous disagreement with the panel's logic. Schriro, 2004 WL 1402732, at *3; id., at *7-8 (Breyer, J., dissenting). Sanchez-Cervantes is no longer good law. See Miller, 335 F.3d at 899-901.

## CONCLUSION

In Schriro, the Supreme Court unanimously agreed that the Ring/Apprendi rule satisfies the fundamental fairness prong of Teague's second exception to the general rule that new procedural rules will not apply retroactively. Unlike in Schriro, this case concerns a sentence that was increased based on facts found by a preponderance of the evidence rather than beyond a reasonable doubt. A long line of Supreme Court cases establishes the integral accuracy enhancing function of the beyond a reasonable doubt standard of proof. Combined, those Supreme Court precedents establish that the Apprendi rule must be applied retroactively to cases on collateral review.

Even if this Court were to rule that Blakely was not retroactive, this would not excuse the ineffective assistance of counsel claim on this argument. Former counsel should have raised this issue at the sentencing phase as well as the appellate phase.

It is clear that if this issue is resolved on the merits, the Petitioner's counsel was ineffective. And based on the ineffective representation, had the issues raised in this §2255 motion been properly raised before this Court, the outcome would have been different.

It is also clear that the government has not mounted a defense to the fact that the jury was never instructed on a schedule of methamphetamine.

Based on all of the facts in this brief as well as the original filing, it is requested that this Court reverse and remand this case for an evidentiary hearing.

Dated this 11 day of November, 2004.

Alejandro Montoya
Alejandro Montoya

/

/

/

/

/

/